UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

REO ACQUISITION GROUP, LLC            )
11538 Jeff Avenue                     )
Lakeview Terrace, California  91342   )
                                      )
                     **Plaintiff**     )
                                      )
  v.                                  )    No. 1:13-cv-1953
                                      )
FEDERAL NATIONAL MORTGAGE ASSOCIATION )
Serve:  Timothy J. Mayopoulos,        )
       President and Chief Executive Officer )
       3900 Wisconsin Avenue, N.W.           )
       Washington, D.C.  20016-2892          )
                                      )
                     **Defendant**   )

**COMPLAINT**
**For Breach of Contract**

REO Acquisition Group, LLC, by counsel, states for its cause of action against the Federal National Mortgage Association as follows:

**Parties**

1.    Plaintiff REO Acquisition Group, LLC ("REO Acquisition") is a limited liability company organized under the laws of the state of California, and has its principal place of business in Lakeview Terrace, California.  REO Acquisition is engaged in the business of acquiring, rehabilitating and selling residential properties.

2.    Defendant Federal National Mortgage Association ("Fannie Mae") is a corporation chartered under the laws of the United States, and has its principal place of business in Washington, D.C.  Fannie Mae is engaged in the business of providing residential mortgage

credit in the United States secondary market, and guarantees and purchases loans from mortgage lenders to enable persons to buy homes, refinance, or rent homes.

## Jurisdiction and Venue

3.  The Court has jurisdiction of this action pursuant to 28 U.S.C. § 1332, in that there is complete diversity of citizenship between the parties and the amount in controversy exceeds Seventy-Five Thousand Dollars ($75,000.00).

4.  Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b), in that Fannie Mae is a resident of this district.  In addition, the parties contractually specified the District of Columbia as the proper venue for all disputes.

## General Allegations

5.  On or about November 16, 2010, REO Acquisition submitted to Fannie Mae a proposal to purchase two pools of foreclosed residential property, consisting of 35 houses located principally in Arizona and California.  The proposal included draft REO Pool Sale Agreement No. ML31110 ("the Agreement").

6.  In connection with its submission of the proposal and Agreement REO Acquisition paid Fannie Mae a deposit of $100,000 toward the aggregate purchase price and expected closing costs for the two pools, which totaled $860,671.00.

7.  On Wednesday, December 8, 2010, Fannie Mae's Pool Sale Transaction Manager, Deidre Rogers, advised REO Acquisition by e-mail that that it had been awarded both pools.  The e-mail also transmitted to REO Acquisition settlement statements for the pool purchases, which set an anticipated settlement date of December 23, 2010.  Ms. Rogers directed REO Acquisition to sign and return the settlement statements and pay the balance of the purchase price into escrow within 72 hours, by December 13, 2010.

8.      Later in the day on December 98, 2010, Ms. Rogers and other Fannie Mae representatives met in California with representatives of REO Acquisition to discuss the pool purchases and REO Acquisition's plans to rehabilitate the houses.

9.      Following the meeting Paula Heiberg, President of REO Acquisition, advised Ms. Rogers by e-mail that REO Acquisition would execute and return the settlement statement that day.  She requested that Fannie Mae return a fully executed copy of the transaction documents as soon as possible because REO Acquisition needed a signed copy in order for its investors to provide the settlement funds.  In an e-mail response on December 9, Ms. Rogers stated that she would have the documents ratified by Fannie Mae when she returned to her office on Monday, December 13.

10.     On December 9, 2010, a representative of REO Acquisition's lender for the pool purchases telephoned Fannie Mae's escrow agent, National Real Estate Information Services ("NREIS"), to discuss transferring by wire the funds required for settlement.  He was told that Fannie Mae would not accept the funds because Fannie Mae would not allow a lender to be involved in the transaction if it intended to take back a mortgage on the acquired properties in order to secure its loan.

11.     On or about December 10, 2010, Robert Blessing of REO Acquisition and representatives of its lender for the transaction held a conference call with Ms. Rogers to discuss funding for the pool purchases.  Ms. Rogers reiterated the information that had been provided by NREIS, to the effect that Fannie Mae would not allow REO Acquisition's lender to be involved in the pool sale transaction if it intended to take back a mortgage on the acquired properties in order to secure the loan.

12. The restriction on lender involvement, including the prohibition on the use of a purchase-money mortgage, as described by Ms. Rogers to REO Acquisition on December 10, 2010, was not a term or condition of the Agreement.

13. In fact, the restriction communicated by Ms. Rogers was a surprise to REO Acquisition. In late September 2010, prior to submitting its proposal, REO Acquisition had advised Ms. Rogers in writing that it intended to finance the project using a lender that would take back a mortgage on the acquired properties to secure its loan. In an e-mail dated October 1, 2010, Ms. Rogers advised REO Acquisition that investor/lenders would be acceptable as long as they aligned themselves with the mission of Fannie Mae and accepted the resale restriction in the REO Pool Sale Agreement. Neither of these conditions disqualified REO Acquisition's lender.

14. On December 15, 2010, Fannie Mae returned to REO Acquisition the fully executed Pool Sale Agreement, as well as fully executed copies of the settlement statements for the two pools. A true and correct copy of the Pool Sale Agreement as executed by the parties is attached as Exhibit 1. True and correct copies of the settlement statements as executed by the parties are attached as Exhibit 2.

15. During the period December 10-17, 2010, REO Acquisition attempted to obtain financing for the pool purchase on terms that would satisfy the restrictions imposed by Fannie Mae on December 9 and 10. It was unable to do so.

16. By e-mail dated Friday, December 17, 2010, Ms. Rogers advised REO Acquisition that its failure to perform the terms of the Agreement could have significant adverse consequences. On Monday, December 20, 2010, Ms. Rogers sent REO Acquisition a second e-mail stating that Fannie Mae was "moving forward per the content" of her December 17 e-mail.

17.     On December 21, 2010, legal counsel for Fannie Mae advised REO Acquisition in writing that it was in default of the Agreement because it had failed to deposit into escrow the funds required to settle the pool purchases.  Fannie Mae's counsel stated that Fannie Mae elected to terminate the Agreement and to retain the $100,000 deposit that REO Acquisition had paid.  A true and correct copy of the December 21 letter is attached as Exhibit 3.

18.     REO Acquisition has demanded on multiple occasions that its deposit be refunded, since the "no lenders" restriction imposed by Fannie Mae on December 9-10 was not a term or condition of the Agreement.  In each instance, Fannie Mae has refused to return the deposit.

## CAUSE OF ACTION
### Breach of Contract

19.     REO Acquisition repeats and incorporates by reference the allegations of Paragraphs 1-18, above, as if fully set forth.

20.     REO Acquisition and Fannie Mae entered into a valid contract, REO Pool Sale Agreement No. ML31110, pursuant to which Fannie Mae agreed to sell, and REO Acquisition agreed to purchase, two pools of residential real property consisting of 35 houses located primarily in Arizona and California.

21.     Pursuant to the contract REO Acquisition deposited $100,000 toward the purchase price of the two pools with Fannie Mae in mid-November 2010.

22.     On December 9, 2010, REO Acquisition's investor/lender attempted to arrange to transfer the balance of the purchase price and closing costs in immediately available funds to Fannie Mae's escrow agent, NREIS, in accordance with the terms of the Agreement.  NREIS rejected the funds on instruction from Fannie Mae.

23.     On or about December 10, 2010, Deirdre Rogers, Fannie Mae's Pool Sale Transaction Manager, reiterated to REO Acquisition and its lender that Fannie Mae would not accept the funds because the lender intended to secure its loan by a mortgage on the acquired properties.

24.     No provision in the Agreement prohibited REO Acquisition from using borrowed funds as part of the purchase price for the pools, or prohibited REO Acquisition from conveying a mortgage or deed of trust in the acquired properties to secure the loan.

25.     Fannie Mae's rejection of the funds proffered by REO Acquisition was a breach of its obligations under the Agreement. But for Fannie Mae's breach, REO Acquisition would have fully performed its obligations under the Agreement and closed the transaction on or about December 23, 2010.

26.     Fannie Mae's letter of December 21, 2010, declaring without legal basis that REO Acquisition was in default of its obligations under the Agreement, and its retention of REO Acquisition's deposit, was a further breach of the Agreement.

26.     Under the terms of Section 7(a) of the Agreement Fannie Mae was obligated, upon its default, to refund the deposit paid by REO Acquisition. Despite multiple demands, it has failed and refused to do so.

27.     As a direct and proximate result of Fannie Mae's breach of contract, REO Acquisition has been damaged in the amount of $100,000.00.

WHEREFORE, plaintiff REO Acquisition Group, LLC, requests that the Court enter judgment in its favor against defendant Federal National Mortgage Association as follows:

A.      Awarding it damages in the amount of One Hundred Thousand Dollars ($100,000.00);

B.Awarding it pre-judgment interest on the judgment amount from December 21, 2010, until the date of judgment;

C.Awarding its reasonable attorneys' fees and costs incurred in connection with this action; and

D.Awarding such other and further relief as justice may require.

Respectfully Submitted,


/s/ Russell J. Gaspar
Russell J. Gaspar, D.C. Bar No. 229781
rgaspar@cohenmohr.com
Andrew K. Wible, D.C. Bar No. 988391
awible@cohenmohr.com
COHEN MOHR LLP
Suite 504, 1055 Thomas Jefferson St., N.W.
Washington, D.C.  20007
(202) 342-2550
(202) 342-6147 (Facsimile)

Attorneys for Plaintiff